

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 21 2018

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

IN THE DISTRICT COURT OF THE UNITED STATES
EASTERN DISTRICT OF ARKANSAS

ANGELIA PETTUS., as Parent and
Next Friend of K.P., a Minor,

    Plaintiff,

v.

CONWAY SCHOOL DISTRICT,

    Defendant.

No. 4:18-cv-872-BSM

This case assigned to District Judge Miller
and to Magistrate Judge Kearney

## COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. 12131, et seq)

Plaintiff, Angelia Pettus, as Parent and Next Friend of K.P., a minor, through counsel, Thomas Nichols and Disability Rights Arkansas, Inc., for her Complaint for Injunctive Relief states:

### Introduction

K.P. is a sixteen-year-old child with severe anxiety who uses a service animal that is individually trained to perform specific tasks related to K.P.'s disability. She is a senior at Conway High School. Although K.P. requires the assistance of her service animal at school, Defendant, Conway School District, has denied permission to be accompanied by her service animal in violation of the Americans with Disabilities Act. K.P. seeks injunctive and declaratory relief, requiring Defendant to allow her the use of her service animal while at school and declaring that the Defendant has violated the ADA with its prohibition.

1

## I. Jurisdiction and Venue

1.      The jurisdiction of this Court is invoked pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; this claim is brought pursuant to federal question jurisdiction pursuant to 28 U.S.C. § 1331, civil rights jurisdiction pursuant to 28 U.S.C. § 1343, and declaratory and injunctive relief jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      This Court has personal jurisdiction over Defendant because Defendant provide educational services in Conway, Faulkner County, Arkansas, which is located within this judicial district.

3.      All of the parties to this action reside in Conway, Faulkner County, Arkansas, and substantially all of the events or omissions giving rise to this claim occurred in Conway, Faulkner County, Arkansas; accordingly, venue properly lies in this Court pursuant to 28 U.S.C. § 1391.

4.      Exhaustion of administrative remedies is not necessary, as this claim solely seeks to redress violations of the ADA by a school district, and expressly does not seek to state claims under the Individuals with Disabilities Education Act. *Fry v. Napoleon Community Schools*, 580 U.S. ___, 137 S.Ct. 743, 197 L.Ed.2d 46 (2017).

## II. Parties

5.      Plaintiff, Angelia Pettus ("Parent") is the mother and natural guardian of K.P., a minor, who brings this action individually and on behalf of her minor child, K.P., a 16-year-old who is a qualified individual with a disability as defined by 42 U.S.C. § 12131.

6. Defendant, Conway School District, ("the District") is a political subdivision of the State of Arkansas charged with public education of students within its geographical district. As a political subdivision of the State of Arkansas, the District is subject to the provisions of 42 U.S.C. § 12131, et seq., and the regulations implementing the ADA with regard to public services.

### III.  Facts

7. K.P. is a sixteen-year-old child who has been diagnosed with severe anxiety and depressive disorder.

8. K.P. is under the care of a psychiatrist and counselor for her severe anxiety and depressive disorder.

9. K.P.'s anxiety causes her to experience severe panic attacks.

10. These attacks are so severe that, when they occur, K.P. is debilitated to the point of inability to function.

11. At times, K.P. is unable to predict the onset of a panic attack.

12. When K.P. realizes that a panic attack is starting, she will begin breathing exercises in order to reduce the severity or likelihood of a panic attack.

13. One trigger for K.P.'s anxiety that will sometimes lead to panic attacks is exposure to large crowds.

14. When she is having a panic attack, K.P. is unable to speak or listen and withdraws from social or educational interaction.

15. When she is at school and experiences a panic attack, K.P. sometimes retreats from the classroom to collect herself and has had to sit under her desk until her panic attack subsides.

16. K.P.'s panic attacks often prevent her from attending school.

17. During the spring semester of the 2017-2018 school year, K.P. missed approximately 44 days of school due to panic attacks. She currently experiences panic attacks approximately four times per school week.

18. K.P.'s severe anxiety and depressive disorder are mental impairments that substantially limit K.P.'s major life activities, including learning, reading, concentrating, thinking, and communicating.

19. K.P. has a record of severe anxiety and depressive disorder that are mental impairments that substantially limit K.P.'s major life activities.

20. K.P. is a person with a disability as defined by the ADA. 42 U.S.C. § 12102(1)-(2).

21. K.P. is a resident of Conway, Arkansas.

22. The District is the Arkansas School District responsible for providing K.P. with a public education. The District is a public entity as defied by the ADA. 42 U.S.C. § 12131(1).

23. The District operates Conway High School, where K.P. attends school as a senior.

24. K.P. is an individual with a disability who, with or without reasonable modifications to rules, policies, or practices meets the essential eligibility requirements

4

for the receipt of services or the participation in programs or activities provided by the District. 42 U.S.C. § 12131(2). Specifically, K.P. is lawfully enrolled in the District through which she receives a public education.

25. Accordingly, K.P. is a "qualified individual with a disability" under the provisions of Title II of the ADA.

26. In May of 2018, Parent contacted the principal of Conway High School, Jason Lawrence, in anticipation of K.P. adopting and training a service animal to assist K.P. with specific tasks related to her disability.

27. Principal Lawrence indicated that K.P. could use a service animal on campus, but that she would require a Section 504 Plan.

28. The District has acknowledged that K.P. is a person with disabilities as defined by both the ADA and Section 504 of the Rehabilitation Act.

29. On August 2, 2018, the District developed a Section 504 plan that identified K.P. as a person with a disability that substantially limits the major life activity of "learning."

30. The Section 504 plan developed by the District consisted of the following accommodations: early release from class to avoid crowded hallways; permission to go to the nurse or counselor at the onset of a panic attack; permission to relocate to alternative seating or to briefly exit the classroom upon the onset of a panic attack; and preferential seating.

31. K.P. possesses a service animal, a dog named "Dobbie."

32. K.P. adopted Dobbie in May of 2018, when Dobbie was six months old, for the purpose of being individually trained to perform tasks related to her disabilities.

33. Over the summer of 2018, K.P. obtained training for Dobbie in obedience and for specific tasks directly related to K.P.'s disabilities.

34. Over the summer of 2018, K.P. obtained training for Dobbie in both obedience and tasks associated with K.P.'s disabilities.

35. Dobbie's training enabled him to function as a service animal in a public environment, including the school environment.

36. K.P. sought obedience training from Clay Smith, who is certified by the Arkansas State Police as a professional instructor and K9 certifying official, and a certified American Kennel Club "Canine Good Citizen Evaluator."

37. Smith has trained, handled, and worked with police dogs and civilian dogs for more than 16 years.

38. Dobbie, with K.P. as his handler, was certified by Smith as a Canine Good Citizen and completed additional training from Smith in intermediate obedience.

39. K.P. also sought the assistance of Pam Ivory, a person who has professionally trained numerous service animals for individuals with disabilities.

40. Pam Ivory assisted K.P. with individually training Dobbie to perform specific tasks related to K.P.'s severe anxiety. Dobbie is a service animal as defined by the ADA. 28 C.F.R. § 36.104.

41. Dobbie's training was completed in September of 2018.

42. As a result of his training, Dobbie is individually trained to perform specific tasks or do work to assist K.P. in connection with her panic attacks.

43. Dobbie alerts K.P. immediately prior to the onset of a panic attack by nudging her, at which time K.P. knows to begin her breathing exercises. This assists K.P. in preparing for and preventing onset of a panic attack.

44. Dobbie "blankets" K.P. when her panic attacks cannot be prevented. "Blanketing" consists of Dobbie applying physical pressure to K.P., which calms K.P., and reduces the length and severity of K.P.'s panic attacks.

45. Dobbie "blocks" K.P. from large crowds, which K.P. identifies as a trigger for her panic attacks. "Blocking" consists of Dobbie placing himself between K.P. and crowds, which reduces the likelihood that a crowd will cause K.P. to experience a panic attack.

46. On September 20, 2018, Parent notified the District that K.P. would be bringing Dobbie to school as a service animal.

47. She informed Buck Bing, the new Conway High School Principal, and Joel Linn, the District's 504 coordinator, that K.P. would be bringing her service animal to school.

48. 504 Coordinator Linn responded to Parent by requesting a letter from K.P.'s psychiatrist evidencing a prescription for a service animal, and a letter from a certified trainer regarding the tasks Dobbie performs.

49. 504 Coordinator Linn advised Parent that the determination of whether K.P. could utilize her service animal was solely up to the 504 committee, who would

7

consider "all of the relevant factors and information regarding the requested accommodation, including but not limited to the documentation [. . .]"

50. Principal Bing advised Parent that she had to submit certification that the service animal was officially licensed as a service animal before he would consider permitting K.P.'s service animal to accompany her to school.

51. After receiving these responses, Parent requested a meeting with the 504 committee regarding K.P.'s request to be accompanied by her service animal.

52. On October 17, 2018, Parent provided the following documentation to Linn and Bing:

    a. A September 19, 2018, letter from Julie Wewers, M.D., endorsing the use of a service animal to assist with K.P.'s "debilitating" panic attacks, and indicating that the use of the service animal "significantly improved [Plaintiff's] anxiety."

    b. A September 22, 2018, certificate from the American Kennel Club indicating that Dobbie, who was trained and handled by Plaintiff, has successfully demonstrated the skills necessary to be deemed a "Canine Good Citizen."

    c. A certificate evidencing that Dobbie completed a "Full Intermediate Obedience Course" through a professional trainer.

    d. A certificate confirming that Dobbie was registered as a service animal with the "Service Animal Registration of America."

    e. A document produced by the Americans with Disabilities Act Technical Assistance Center regarding service animals and the laws and regulations governing service animals.

    f. A document produced by the United States Department of Justice, Civil Rights Division, Disability Rights Section,

        regarding the use of service animals pursuant to the Americans with Disabilities Act in Title II and Title III entities.

53. On October 23, 2018, the District conducted a 504 committee meeting.

54. The meeting included both counselors and teachers from the school who had interaction with K.P.

55. At the meeting, Parent requested that K.P. be permitted to bring Dobbie to school, and explained the specific tasks Dobbie was trained to perform and how those tasks assist K.P.

56. During the course of the meeting, Principal Bing asked that the teachers and counselors to vote on whether K.P. should be permitted to bring Dobbie to school.

57. The teachers and counselors voted that K.P. should not be permitted to bring her service animal to school.

58. Some teachers questioned whether K.P. required a service animal at all, and some teachers expressed concerns regarding allergies or disturbance to the educational environment.

59. As a result of the vote at the 504 meeting, the District refused to allow K.P. to bring her service animal to school.

## IV. Claim under Title II of the Americans with Disabilities Act

60. Defendant is a "public entity," as defined by Title II of the ADA. 42 U.S.C. § 12131(1).

61. Plaintiff is a "qualified individual with a disability" under the provisions of Title II of the ADA. 42 U.S.C. § 12131(2).

62.     Dobbie is a service animal as defined by the regulations implementing the ADA.  28 C.F.R. § 35.104.

63.     Title II of the ADA prohibits (1) the exclusion from participation in services, programs, or activities of a public entity; (2) the denial of benefits of the services, programs, or activities of a public entity; and (3) discrimination by any public entity.  42 U.S.C. § 12132.

64.     The regulations implementing the ADA regulations expressly govern the admission of service animals to "public entities," such as a school or other instrumentalities of government.  28 C.F.R. § 35.136.  The regulations require that "a public entity *shall* modify its policies, practices, or procedures to permit the use of a service animal by a person with a disability."  28 C.F.R. § 35.136(a) (emphasis added).

65.     The ADA regulations define a service animal as, "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability[.]" 28 C.F.R. § 36.104.

66.     The ADA regulations prohibit a public entity from requiring "documentation, such as proof that the animal has been certified, trained, or licensed as a service animal." 28 C.F.R. § 35.136(f).

67.     The ADA regulations do not allow a public entity to "ask about the nature or extent of a person's disabilities."  28 C.F.R. § 35.136(f).  A public entity can only ask: "[whether] the animal is required because of a disability and what work or task the animal has been trained to perform." *Id*.

68.     Dobbie is a service animal as defined by the ADA regulations.

10

69. K.P., who is a qualified individual with a disability, requested the use of her service animal in connection with programs or services received from the District, a public entity under the ADA.

70. The District prohibited K.P. from using her service animal at school.

71. The District required documentation from K.P.'s trainers, psychiatrist, and counselors regarding K.P.'s service animal, and patently exceeded the inquiries permitted by the ADA regulations.

72. The District, through its conduct of excluding K.P.'s service animal, and engaging in an impermissible inquiry to support its exclusion of K.P.'s service animal, has violated the ADA, entitling Plaintiff to injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. Issue a preliminary injunction ordering Defendant to immediately allow K.P. to attend school with her service animal.

2. Issue a declaratory judgement that Defendant's actions and conduct violated the ADA.

3. Issue a permanent injunction ordering Defendant to permit K.P. to attend school accompanied by her service animal through the duration of Plaintiff's time at Conway High School or any other school within the District.

4. For Plaintiff's reasonable attorney's fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 12205.

5. For any additional relief deemed just and appropriate by the Court.

Dated:  November 21, 2018

                                         Respectfully Submitted,

                                         _____
                                         Thomas Nichols
                                         Ark. Bar No. 2009120
                                         Disability Rights Arkansas, Inc.
                                         400 West Capitol Ave., Suite 1200
                                         Little Rock, AR  72201
                                         501-492-5776 – p
                                         501-296-1779 – f
                                         TNichols@DisabilityRightsAR.org

                                         Attorney for the Plaintiff