IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**ANGELIA PETTUS as**                                                      **PLAINTIFF**
**Parent and Next Friend of K.P., Minor**

v.                      **CASE NO. 4:18-CV-00872 BSM**

**CONWAY SCHOOL DISTRICT**                                **DEFENDANT**

**ORDER**

Plaintiff's motion for a preliminary injunction [Doc. No. 2] is denied.

I. BACKGROUND

K.P. is a sixteen-year-old senior at Conway High School. Pettus Aff. ¶¶ 2, 28, 29, Doc. No. 2. She skipped her junior year and plans to graduate in May 2019. Bing Aff. ¶ 2, Doc. No. 7-1. K.P. maintains excellent grades, is in the school band, and attends football games. *See id.* ¶ 13; Academic Records, Bing. Aff. Ex. 4, Doc. No. 7-1.

K.P. receives treatment for anxiety and depression. Pettus Aff. ¶ 3. K.P.'s anxiety manifests itself in the form of panic attacks, which are sometimes triggered by large crowds. *Id.* ¶ 4, 9. These panic attacks are debilitating, and K.P. cannot always tell when an attack is about to happen. *Id.* 4, 7. She uses breathing exercises to cope with her attacks and, on occasions, has sat under her desk in class when they have occurred. *Id.* ¶ 6, 8. K.P.'s mother, Angela Pettus, states that K.P. has missed school due to panic attacks. *Id.* ¶ 12.

K.P. adopted a dog named Dobbie, who was trained to alert K.P. of impending panic attacks, calm K.P. during panic attacks, and block K.P. from crowds. Pettus Aff. ¶¶ 13, 15, 17, 20–28.

Pettus met with the school to develop a plan under section 504 of the Rehabilitation Act of 1973 to minimize the impact of K.P.'s anxiety on her education. *Id.* ¶ 41. Her aim was, at least in part, to ensure K.P. could bring Dobbie to school. *Id.* ¶¶ 30–32.

When the parties met to develop the 504 plan, the school district agreed that K.P.: (1) could leave the classroom and go to the school nurse or counselor at the onset of anxiety; (2) could have alternative seating; and (3) could leave class early to avoid crowded hallways. Bing Aff. ¶ 4. The district also offered to: (1) keep K.P.'s prescription medicine in the school nurse's office; (2) alert K.P. in advance of drills so she could avoid crowds; (3) allow K.P. to be in an alternative location during assemblies; (4) have extra time on assignments; and (5) wear a weighted vest during panic attacks. *Id.* ¶ 5. The teachers and counselors voted that K.P. should not be allowed to bring Dobbie to school, and the school district decided that Dobbie would not be allowed. Pettus Aff. ¶¶ 47, 48.

Pettus declined the accommodations offered by the district and filed this lawsuit to require the district to permit K.P. to bring Dobbie to school. A hearing was held on December 19, 2018, and plaintiff's request for preliminary injunction is denied.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008), and the district court has discretion as to the granting of such relief. *See Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). A party seeking a preliminary injunction must prove that: (1) she will suffer irreparable harm if the injunction

is denied; (2) the harm to the movant, if the injunction is denied, outweighs the harm to the non-movant if the injunction is granted; (3) there is a likelihood of success on the merits; and (4) an injunction is in the public's interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

### III. DISCUSSION

A.   Exhaustion

The district's motion to dismiss, on the grounds that Pettus failed to exhaust her administrative remedies, is denied.

Pettus was not required to exhaust administrative remedies because she is not attempting to enforce K.P.'s right to a free appropriate public education ("FAPE") as defined by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1412 (providing that schools receiving federal funds must provide a FAPE to all disabled children). Plaintiffs seeking relief under the IDEA must comply with the IDEA's exhaustion requirement even if they do not bring an IDEA claim. *Id.* § 1415(*l*).

Exhaustion is not required when a lawsuit against a school seeks something other than a FAPE. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). Two questions must be answered when determining whether the lawsuit against a school seeks a FAPE: (1) could the plaintiff have brought the same claim against a public facility that was *not* a school?; and (2) could a non-student, for example an employee, at the school have brought the same claim? *Id.* at 756. An additional consideration is the history of the proceedings, specifically

whether a plaintiff attempted to proceed under the IDEA before switching to an ADA or other claim. *Id.* at 757.

Pettus is not seeking a FAPE because she could bring the same claim against another public entity and her claim could be brought by a non-student. Therefore, this is not an IDEA claim and exhaustion is not required. *See id.* at 748; *Alboniga v. Sch. Bd. of Broward Cty., Fla.*, 87 F. Supp. 3d 1319, 1329–30 (S.D. Fla. 2015).

B.  Likelihood of Success on the Merits

To obtain a preliminary injunction, Pettus must show that she is likely to succeed at trial. She has not met this burden.

To meet her burden, Pettus must show: (1) the district is a public entity; (2) K.P. is a qualified individual with a disability; and (3) the district's actions excluded K.P. from participation in school, denied her the benefits of school, or subjected her to discrimination. *See* 42 U.S.C. § 12132. Although the first two elements have been satisfied, Pettus has not shown that excluding Dobbie from school will deprive K.P. from participation in school, deny her benefits, or subject her to discrimination.

*1. Legal Framework*

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, prohibits discrimination against a "qualified individual with a disability" or excluding such an individual from a public entity's "services, programs, or activities" because of a disability. A qualified individual is one who "meets the essential eligibility requirements for the receipt

4

of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The Attorney General is authorized to issue regulations implementing the ADA, *id.* § 12134, and has issued regulations addressing service animals. *See* 28 C.F.R. §§ 35.130, 35.136.

A public entity is required to "make reasonable modifications" to its policies "unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Id.* § 35.30(b)(7)(i). Further, a public entity is required to provide accommodations "in the most integrated setting appropriate to the needs of qualified individuals." *Id.* § 35.130(d).

Public entities are required to modify their "policies, practices, or procedures to permit the use of a service animal by an individual with a disability." *Id.* § 35.136(a). A service animal is "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." *Id.* § 35.104. "Service animals" include those animals that help "persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors." *Id.*

The existence of specific regulations concerning service animals does not mean that a service animal is always a "reasonable" accommodation under the ADA. Rather, these regulations are a part of, and a particular application of, the general statutory and regulatory scheme. *Alboniga*, 87 F. Supp. 3d at 1335; 28 C.F.R. § 35.104. Put differently, section

35.136 requires that a public entity "generally" modify its policies to accommodate a disabled individual's service animal; however, this provision only applies when the service animal is itself a "reasonable" accommodation under section 35.104. *See Alboniga*, 87 F. Supp. 3d at 1335.

### 2. Application

Although the district must make "reasonable modifications" to its policies to avoid disability discrimination, 28 C.F.R. § 35.130, the ADA does not require the district to provide the specific accommodation requested by Pettus. *See Scruggs v. Pulaski Cty.*, 817 F.3d 1087, 1093 (8th Cir. 2016). The district need only provide "an accommodation that is reasonable." *Id.* Requiring the district to permit K.P. to bring Dobbie to school is unreasonable.

First, a dog's presence in the classroom would be distracting to other students, even if the dog is well-behaved. For students, faculty, and staff with allergies, a dog could be truly disruptive. This would be compounded if multiple students were permitted to bring dogs to school.

Second, K.P.'s anxiety attacks happen relatively infrequently. While they detract from K.P.'s schooling, permitting her to have a dog with her every minute of every school day is not necessary when K.P. has other means of controlling the frequency and severity of her attacks. Importantly, the district has agreed to permit K.P. to sit under her desk, leave class early to avoid crowds, as well as a host of other accommodations. In light of the accommodations, some of which K.P. and Pettus have refused, it is unclear that Dobbie's

presence would make a significant impact on K.P.'s educational and social experience.

Third, K.P. is a high-achieving student who seems engaged both in and out of the classroom. She is an A-student, participates in band, and attends football games. While her anxiety interrupts her ability to participate fully, it does not deny her the opportunity to meaningfully participate and receive both the educational and social benefits of attending school.

Finally, deference to educators is appropriate when making determinations affecting the school environment. *See Morse v. Frederick*, 551 U.S. 393, 417 (Thomas, J., concurring). The district is staffed by experienced educators and administrators who are responsible for educating many students in addition to K.P. Its determination that bringing Dobbie to school is unreasonable is one factor weighing against permitting it.

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' request for a preliminary injunction [Doc. No. 2] is denied.

IT IS SO ORDERED this 2nd day of January 2019.

_____
UNITED STATES DISTRICT JUDGE